IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RICHARD BALDWIN, | § | |
| | § | |
| Defendant/Counterclaim-Plaintiff Below, Appellant, | § | No. 303, 2021 |
| | § | |
| v. | § | Court Below:  Superior Court of the State of Delaware |
| | § | |
| NEW WOOD RESOURCES LLC, | § | |
| | § | |
| Plaintiff/Counterclaim-Defendant Below, Appellee. | § | C.A. No. N20C-10-231 |

Submitted:   June 8, 2022
Decided:     August 16, 2022

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES** Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court.  **REVERSED** and **REMANDED**.

Sean J. Bellew, Esquire (*argued*), Bellew, LLC, Wilmington, Delaware.  *Of Counsel*: Chris L. Gilbert, Esquire, Gilbert PC, Dallas, Texas, *for Appellant.*

Richard P. Rollo, Esquire (*argued*), Travis S. Hunter, Esquire, Renée Mosley Delcollo, Esquire, Richards Layton & Finger, P.A., Wilmington, Delaware *for Appellee.*

**VALIHURA**, Justice:

This appeal involves a breach of contract claim arising out of an indemnitee's refusal to repay money advanced pursuant to an LLC Agreement. Under the LLC Agreement, a Person is entitled to indemnification if the Person acted in good faith and in a manner believed to be in or not opposed to the best interests of the Company.[1] The indemnification payments are further conditioned on the Person's written undertaking to repay all amounts advanced under the LLC Agreement if it is later determined that the Person has not satisfied the standard of conduct, and thus, is not entitled to indemnification.

According to the LLC Agreement, the determination of whether a Person acted in good faith may be made in one of three ways: (1) by the managers; (2) by independent legal counsel; or (3) by a majority of the then-outstanding unitholders. We address the narrow issue of whether the LLC Agreement contains an implied covenant of good faith that would require this determination of a Person's entitlement to indemnification to be made in good faith. For the reasons set forth below, we hold that it does. Therefore, we **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Parties*

Plaintiff/Counterclaim-Defendant Below-Appellee New Wood Resources LLC ("New Wood") is a Delaware limited liability company that was formed on September 6,

---

[1] A52 (Second Am. & Restated LLC Agreement § 8.2). "Person" is defined in the LLC Agreement as "any natural person, corporation, limited partnership, general partnership, joint stock company, joint venture, association, company, trust, bank trust company, []land trust, business trust, or other organization, whether or not a legal entity, and any government or agency or political subdivision thereof." A75 (Schedule II Ex. A, Defined Terms).

2

2013.[2] New Wood operates a plywood and veneer manufacturing facility in Mississippi known as Winston Plywood & Veneer LLC ("WPV"). New Wood controls WPV through New Wood's wholly-owned subsidiary, WPV Holdco LLC ("Holdco").[3] ACR Winston Preferred Holdings LLC ("ACR") held approximately 85.52 percent of New Wood's then-outstanding units, making it the majority holder of New Wood. Andrew M. Bursky ("Bursky") was President of ACR. Kurt Liebich ("Liebich") was the former Chief Executive Officer of Winston.

Defendant/Counterclaim-Plaintiff Below-Appellant Dr. Richard F. Baldwin ("Baldwin") served as a manager of New Wood starting in September of 2013,[4] and served as a member of New Wood's Board of Managers.[5] Baldwin served as the manager of Oak Creek Investments LLC ("OCI").[6] OCI is also a member of New Wood. Baldwin was asked to invest in New Wood, and to oversee the revitalization of a newly acquired plywood mill in Louisville, Mississippi.[7]

---

[2] A12 (Pl.'s Am. Compl. ¶ 2); A13 (Pl.'s Am. Compl. ¶ 7).

[3] A126 (Def.'s Countercl. ¶¶ 8–9).

[4] A12 (Pl.'s Am. Compl. ¶ 3).

[5] A13 (Pl.'s Am. Compl. ¶ 8).

[6] A16 (Pl.'s Am. Compl. ¶ 12); A130 (Def.'s Countercl. ¶ 20); A175 (Pl.'s Answer to Def.'s Countercl. ¶ 20).

[7] A126 (Def.'s Countercl. ¶ 10). Baldwin avers that he "is a renowned expert in the forest-products industry, including plywood manufacturing," and that "he has been installing major equipment in plywood mills since 1965." A126 (Def's Countercl. ¶ 5). Also, as the Court of Chancery observed, "Baldwin has an extensive track record of revitalizing underperforming plywood mills." Court of Chancery Ruling, *Winston Plywood & Veneer LLC v. Oak Creek Investments, LLC*, C.A. No. 2018-0350-JRS, Dkt. No. 71, at 5 (Del. Ch. March 20, 2020) (TRANSCRIPT) [hereinafter Mar. 20, 2020 Ct. Ch. Ruling].

*B. The LLC Agreement*

In March 2014, New Wood's members entered the Second Amended and Restated Limited Liability Company Agreement (the "LLC Agreement" or the "Agreement").[8] The LLC Agreement provides certain indemnification and advancement rights to its Managers. Specifically, Section 8.2 governs indemnification rights. The first part of Section 8.2 addresses who is entitled to indemnification as well as the standard of conduct an indemnitee must satisfy:

> Right to Indemnification. Subject to the limitations and conditions as provided in this Article 8, each Person who was or is made a party or is threatened to be made a party to or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, arbitrative or investigative (hereinafter, a "Proceeding"), or any appeal in such a Proceeding or any inquiry or investigation that could lead to such a Proceeding, by reason of the fact that it, or a Person of whom it is the legal representative, is or was a Member, Manager, Member of a Committee of the Board or an Officer, or while a Member, Manager or an Officer is or was serving at the request of the Company as a member, manager, director, officer, partner, venturer, proprietor, trustee, employee, agent or similar functionary of another foreign or domestic limited liability company, corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan or other Person (each, an "Indemnitee") *shall be indemnified by the Company to the fullest extent permitted by the Act*, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Company to provide broader indemnification rights than said Act permitted the Company to provide prior to such amendment) against judgments, penalties (including excise and similar taxes and punitive damages), fines, settlements and reasonable expenses (including attorneys' fees) actually incurred by such Person in connection with such Proceeding, and indemnification under this Article 8 shall continue as to a Person who has ceased to serve in the capacity which initially entitled such Person to indemnity hereunder. *Notwithstanding anything to the contrary in this Section 8.2, no Person shall be entitled to indemnification hereunder unless it is found (in the manner described below*

---

[8] A13 (Pl.'s Am. Compl. ¶ 7). Pursuant to the LLC Agreement, New Wood is managed by its Board of Managers (the "Board"). A13 (Pl.'s Am. Compl. ¶ 8).

4

*in this Section 8.2) that, with respect to the matter for which such Person seeks indemnification, such Person acted in good faith and in a manner that he or she reasonably believed to be in or not opposed to the best interests of the Company* and, with respect to any criminal action or proceeding, had no reasonable cause to believe his or her conduct was unlawful. The termination of any Proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Person did not act in good faith and in a manner which he or she reasonably believed to be in or not opposed to the best interests of the Company and, with respect to any criminal Proceeding, had reasonable cause to believe that his or her conduct was unlawful.[9]

The second part of Section 8.2 addresses how the determination is made as to

whether an indemnitee has met the standard of conduct:

*The finding of the standard of conduct required above shall be made (a) by a majority vote of all of the Managers who are not parties to such Proceeding even though less than a quorum or (b) if there are no such Managers, or if such Managers so direct, by independent legal counsel in a written opinion or (c) by holders of a Majority of the then-outstanding Units (determined without regard to any Members that are parties to such Proceeding).* Notwithstanding anything to the contrary herein, "internal disputes" shall be excluded from the types of claims indemnified hereunder. For purposes of the preceding sentence, an "internal dispute" is defined exclusively as any proceeding commenced by any Atlas Member or one or more officers, directors, managers, partners, members or employees of any Atlas Member against any other Atlas Member or one or more other officers, directors, managers, partners, members or employees of such Atlas Member.[10]

Section 8.3 governs advancement rights, and provides as follows:

Advance Payment. The right to indemnification conferred in this Article 8 *shall include the right to be paid or reimbursed by the Company* the reasonable expenses incurred by a Person of the type entitled to be indemnified under Section 8.2 who was, is or is threatened to be made a named defendant or respondent in a Proceeding in advance of the final disposition of the Proceeding and without any determination as to the Person's ultimate entitlement to indemnification; *provided, however, that*

---

[9] A52–53 (Second Am. & Restated LLC Agreement § 8.2) (emphasis added).

[10] A53 (Second Am. & Restated LLC Agreement § 8.2) (emphasis added).

*the, payment of such expenses incurred by any such Person in advance of the final disposition of a Proceeding shall be made only upon delivery to the Company of a written affirmation by such Person of its good faith belief that it has met the standard of conduct necessary for indemnification under this Article 8 and a written undertaking, by or on behalf of such Person, to repay all amounts so advanced if it shall ultimately be determined that such indemnified Person is not entitled to be indemnified under this Article 8 or otherwise.*[11]

Thus, Section 8.3 conditions a Person's receipt of advancement on: (1) delivery of the written affirmation by the Person that the Person has satisfied the standard of conduct (an "Affirmation"), and (2) execution of a written undertaking to repay all advanced amounts if it is ultimately determined that the Person is not entitled to indemnification (an "Undertaking").

## C. *Baldwin's Employment by New Wood*

New Wood leased the WPV manufacturing facility in Louisville, Mississippi.[12] The facility had been dormant for years and was in need of repair. New Wood began to make repairs so that it could operate a plywood mill. New Wood chose Baldwin to oversee the restoration and revitalization of the WPV manufacturing facility because of Baldwin's expertise and prior successful business ventures in the forest-products industry.[13] However, prior to the WPV facility's completion, the facility was destroyed by an EF-4 tornado.[14] Thereafter, WPV received funding from the Federal Emergency Management

---

[11] A53 (Second Am. & Restated LLC Agreement § 8.3) (emphasis added).

[12] A127 (Def.'s Countercl. ¶¶ 11, 12).

[13] A126 (Def.'s Countercl. ¶¶ 5, 6, 10).

[14] A127 (Def.'s Countercl. ¶ 13).

6

Agency, and Baldwin took the lead role on behalf of New Wood to restore the WPV facility and transform it into a functioning and profitable plywood manufacturing facility.[15]

On August 24, 2016, just before the WPV mill was set to begin operations, Baldwin was terminated from his position as the President and General Manager of WPV by Bursky and Liebich.

## D. The Underlying Actions

Three underlying lawsuits preceded the current litigation (the three lawsuits are referred to collectively as the "Lawsuits"). The Lawsuits were by and between Baldwin, New Wood, Bursky, and other entities in the following courts: the Mississippi federal court, the Mississippi state court, and the Delaware Court of Chancery.[16]

OCI, which was managed by Baldwin at the time,[17] initiated the first action on February 9, 2018 by filing a complaint in the United States District Court for the Northern District of Mississippi (the "Mississippi Federal Action"). The Mississippi Federal Action alleged breach of contract, fraud, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty, among other things, against Atlas FRM LLC d/b/a Atlas Holdings LLC, Bursky,[18] Liebich, New Wood, Holdco, and WPV (collectively, the

---

[15] A127 (Def.'s Countercl. ¶ 14).

[16] A16–17 (Pl.'s Am. Compl. ¶¶ 12–17). The Mississippi federal court action is captioned *Oak Creek Investments, LLC v. Atlas Holdings LLC*, No. 1:18-cv-0023-SA-DAS (N.D. Miss.). The Mississippi state court action is captioned *Oak Creek Investments, LLC v. Atlas FRM LLC d/b/a Atlas Holdings, LLC*, No. 2018-091-CVM (Miss. Cir. Ct., Winston Cty.). The Delaware Court of Chancery action, referred to herein as the Delaware Plenary Action, is captioned *Winston Plywood & Veneer LLC v. Oak Creek Investments, LLC*, C.A. No. 2018-0350 (Del. Ch.).

[17] Baldwin was the Managing Member of OCI. A16 (Pl.'s Am. Compl. ¶ 12).

[18] For example, the Mississippi Federal Action contained the following allegation against Bursky:

7

"Defendants").  OCI sought declaratory judgment relief relating to the alleged improper dilution of OCI's equity interests and veil piercing arising out of a Management Services Agreement by and between Baldwin and WPV and investments by Baldwin in New Wood and Holdco.[19]  According to Baldwin, the basis for the claims in the Mississippi Federal Action arose out of and related to the termination of Baldwin as the President and General Manager of WPV.

On May 17, 2018, the Defendants moved for dismissal of the Mississippi Federal Action for lack of subject matter jurisdiction.[20]  That same day, the Defendants filed suit against OCI and Baldwin in the Delaware Court of Chancery (the "Delaware Plenary Action"), asserting various claims for breach of fiduciary duty, breach of contract, and

---

> Acting in their individual and representative capacities, Defendants Bursky's and Liebich's willful and bad-faith conduct, as well as the conduct of others, reached a climax on August 24, 2016 when, just weeks before the [WPV] mill was set to begin operations, with no prior notice, with no plausible rationale or reason, with no regard for OCI's significant investment in NWR and WPV, and with no consideration for Dr. Baldwin's efforts leading the mill to startup, or his superior knowledge of constructing and operating a plywood mill, Dr. Baldwin was summarily terminated from his role as President and General Manager of WPV.

Opening Br. at 6 (citing Pl.'s Compl. ¶ 21, *Oak Creek Invs., LLC v. Atlas Holdings LLC*, No. 1:18-cv-0023 (N.D. Miss. Feb. 9, 2018)).  In his answering brief in the proceedings before the Superior Court, Baldwin avers that the claims for breach of the implied covenant of good faith and fair dealing and breach of fiduciary duty asserted in the Mississippi Federal Action "arose from the wrongful attempted ouster of Dr. Baldwin and purposeful dilution of OCI's equity in New Wood." B36 (Def./Countercl.-Pl. Richard F. Baldwin's Answering Br. in Opp'n to Pl./Countercl.-Def. New Wood Resources LLC's Mot. for J. on the Pleadings [hereinafter Super. Ct. Ans. Br.]).  The Court of Chancery noted in its March 20, 2020 Transcript Ruling that Baldwin alleged that his termination "was the culmination of a pattern of micromanagement by Bursky and Liebich that undermined Baldwin's authority and decision-making."  Mar. 20, 2020 Ct. Ch. Ruling, C.A. No. 2018-0350-JRS, at 6.

[19] *See* A16 (Pl.'s Am. Compl. ¶ 12).

[20] A16 (Pl.'s Am. Compl. ¶ 13).

8

negligence. The Delaware Plenary Action also sought a declaratory judgment that OCI's allegations against the Defendants in the Mississippi Federal Action were false.

On May 25, 2018, OCI filed a Notice of Dismissal Without Prejudice in the Mississippi Federal Action.[21] That same day, OCI refiled the claims asserted in the Mississippi Federal Action against the same Defendants in the Circuit Court of Winston County, Mississippi (the "Mississippi State Action").[22] The Defendants moved to dismiss based on Mississippi's "first-filed-rule" and on *forum non conveniens*.

### E. Baldwin's Advancement Action

While litigation in the Mississippi State Action was pending, Baldwin and OCI sought advancement of their litigation expenses pursuant to Section 8.3 of the LLC Agreement. Under Section 8.3, Baldwin and OCI were required to provide an Affirmation and an Undertaking. On August 10, 2018, Baldwin sent a letter on his own behalf[23] and one on behalf of OCI[24] whereby they agreed "to repay all amounts so advanced if it shall ultimately be determined that [Baldwin/OCI is] not entitled to be indemnified in this lawsuit." New Wood declined Baldwin's and OCI's requests.[25]

On January 10, 2019, Baldwin filed an advancement action in the Delaware Court

---

[21] According to Baldwin, none of the Defendants had filed an answer to the complaint, making the dismissal without prejudice "automatic." Opening Br. at 8.

[22] A17 (Pl.'s Am. Compl. ¶ 14); A144 (Advancement Compl. ¶ 7).

[23] A93 (Baldwin's Written Undertaking).

[24] A94 (OCI's Written Undertaking).

[25] A161 (Advancement Compl. ¶ 54); Opening Br. Addendum at 5 (*New Wood Res. LLC v. Baldwin*, 2021 WL 3784258, at 2 (Del. Super. Aug. 23, 2021)).

9

of Chancery against New Wood, Holdco, and WPV (the "Advancement Action").[26] In this action, Baldwin sought advancement for fees incurred in the Delaware Plenary Action as well as fees and interest incurred in litigating the Advancement Action (the "fees on fees").

On February 22, 2019, the Mississippi State Action was dismissed on grounds of *forum non conveniens*.[27] Following that dismissal, on March 25, 2019, Baldwin and OCI filed their Answer and Counterclaims in the Delaware Plenary Action.[28]

On May 9, 2019, Baldwin moved for partial summary judgment in the Advancement Action. In his accompanying brief, Baldwin stated that New Wood had not advanced any funds in response to his August 10, 2018 demand. Baldwin alleged that on September 10, 2018, New Wood's counsel stated that it was "assessing" his demand.[29] In addition, New Wood sought from Baldwin and OCI "'all potential sources of alternative funding' along with 'any documents relating to or reflecting such rights[.]'"[30] New Wood also sought

---

[26] A131 (Def.'s Countercl. ¶ 29); *see generally* A142–64 (Advancement Compl.). The Advancement Action is captioned *Baldwin v. New Wood Resources, LLC*, C.A. No. 2019-0019 (Del. Ch.).

[27] Opening Br. at 10. On November 17, 2020, the Court of Appeals of Mississippi reversed and remanded the matter and directed the circuit court to enter a new judgment that included a stipulation tolling the statute of limitations beginning on the date that OCI filed its complaint in that matter. *See Oak Creek Invs., LLC v. Atlas FRM LLC*, 307 So.3d 503, 505 (Miss. Ct. App. 2020). The Court of Appeals of Mississippi agreed that the action should be dismissed, but only based on *forum non conveniens*. The court explained that the matter could not be dismissed based on the first-filed-rule because that rule only applies when the first and second actions are pending in Mississippi courts. Accordingly, the court remanded for the lower court to obtain a stipulation of the parties, as required under the Mississippi code. The court, however, declined to address the parties' other arguments on appeal because it considered those issues beyond the scope of appeal.

[28] A130 (Def.'s Countercl. ¶ 24).

[29] A157 (Advancement Compl. ¶ 39).

[30] *Id*.

10

"details of all steps Dr. Baldwin and/or OCI have taken to secure funding from any other source."[31] Baldwin argued that New Wood "sought to create insurmountable hurdles" for OCI and him.[32] Baldwin stated that he responded to these requests, which were met with further requests for additional information and further delay.

During the September 16, 2019 oral argument on Baldwin's motion for partial summary judgment in the Advancement Action, the Vice Chancellor noted that he "struggle[ed] to see [the defendants'] construction as being a reasonable one[,]"[33] and ruled that Baldwin was entitled to advancement of his litigation expenses, including attorneys' fees, incurred in defending against the claims asserted in the Delaware Plenary Action, as well as his fees and expenses incurred in the Advancement Action following his execution of the Undertakings. The Court of Chancery directed the parties to "put[] in place a

---

[31] *Id*.

[32] A157–58 (Advancement Compl. ¶ 39).

[33] *Baldwin v. New Wood Res., LLC*, C.A. No. 2019-0019-JRS, Dkt. No. 46, at 34 (Del. Ch. Sept. 16, 2019) (TRANSCRIPT) [hereinafter Sept. 16, 2019 Ct. Ch. Tr.]; *see* A131 (Def.'s Countercl. ¶ 30). Section 8.6 of the LLC Agreement requires that prior to seeking indemnification pursuant to Section 8, each indemnitee will use reasonable efforts to pursue indemnification available from insurance, any Subsidiary, if any, involved, and other sources in a timely manner. A54 (Second Am. & Restated LLC Agreement § 8.6). Baldwin argued below that to read Section 8.6 as requiring exhaustion of other sources prior to advancement would eviscerate the advancement provision in Section 8.3. The Court of Chancery also struggled with New Wood's construction of the LLC Agreement stating that "the only right that is subject to the exhaustion condition is the right to indemnification" as opposed to advancement. Sept. 16, 2019 Ct. Ch. Tr., C.A. No. 2019-0019-JRS, at 35:7–12 ("So what I'm struggling with is since we see advancement separated out here in the contract in 8.3, and our law recognizes it as a subset of indemnification, but a separate right, why would that 8.3 that says nothing of exhaustion there be subject to an exhaustion condition?"). In its bench ruling, the Court of Chancery rejected New Wood's argument stating that "[b]y it's unambiguous terms, Section 8.6 only applies to indemnification, not advancement." *Id*. at 76:7–9.

11

*Fitracks* process to govern future advancement requests."[34]  On October 14, 2019, the Court of Chancery entered an order directing New Wood to pay $269,881.61 as 75% of the advancement costs sought for Baldwin's and OCI's costs and expenses defending the Delaware Plenary Action through September 17, 2019, $17,726.97 in prejudgment interest and $214,459.49 as 75% of the fees on fees costs they incurred bringing the Advancement Action.[35]

New Wood made its first timely partial advancement payment, but then objected to the subsequent advancement request.[36]  This prompted Baldwin to file, on March 16, 2020, a motion for fees and expenses pursuant to Court of Chancery Rule 88[37] (the "Rule 88

---

[34] Sept. 16, 2019 Ct. Ch. Tr., C.A. No. 2019-0019-JRS, at 84:7–8.  A *Fitracks* process is a set of procedures described in *Danenberg v. Fitracks, Inc.*, 58 A.3d 991 (Del. Ch. 2012) which requires "the senior Delaware counsel for the party seeking advancements [to] oversee[] the preparation of a detailed submission supporting the advancement request and [to] certif[y] that the amounts sought fall within the scope of the advancement right." *White v. Curo Texas Holdings, LLC*, 2017 WL 1369332, at *1 (Del. Ch. Feb. 21, 2017).  If the responding party objects, the senior Delaware counsel for the responding party will oversee "the preparation of a similarly detailed set of objections and certif[y] that those amounts fall outside the scope of the advancement right."  *Id.* "After the exchange of written materials, the senior Delaware lawyers confer in good faith in an effort to resolve disputes without court involvement."  *Id.*

[35] A200–01 (Order Granting Pls.' Mot. Partial Summ. J. ¶¶ 3–4).

[36] Oral Ruling, *Baldwin v. New Wood Res., LLC*, C.A. No. 2019-0019-JRS, Dkt. No. 59, at 29:12–15 (Del. Ch. August 10, 2020) (TRANSCRIPT) [hereinafter Aug. 10, 2020 Ct. Ch. Ruling].

[37] Court of Chancery Rule 88 provides:

> In every case in which an application to the Court [of Chancery] is made for a fee or for reimbursement for expenses or services the Court [of Chancery] shall require the applicant to make an affidavit or submit a letter, as the Court [of Chancery] may direct, itemizing (1) the amount which has been received, or will be received, for that purpose from any source, and (2) the expenses incurred and services rendered, before making such an allowance.  This rule shall not apply to any petition for the allowance of additional commissions or fees pursuant to Rule 192.

Ct. Ch. R. 88.

12

Motion") requesting outstanding fees and expenses, plus pre- and post-judgment interest.[38] In his Rule 88 Motion, Baldwin stated that New Wood was asserting that it had insufficient funds to advance the amounts owed. His Rule 88 Motion also stated that New Wood had paid $502,068.07 of the $638,702.13, plus interest, requested. Baldwin requested that New Wood be ordered to pay $223,373.70, plus pre- and post-judgment interest as well as fees on fees.

On January 23, 2020, New Wood, Holdco, and WPV voluntarily dismissed their claims in the Delaware Plenary Action, which left only Baldwin's and OCI's counterclaims remaining.[39]

On March 20, 2020, the Court of Chancery granted New Wood's Rule 12(c) motion for partial judgment on the pleadings in the Delaware Plenary Action as to the following claims: fraud and fraud in the inducement against Bursky, Liebich, New Wood, ACR, and Holdco (Counts III and IV); conspiracy to commit fraud against all Defendants (Count VIII); and corporate veil piercing against Atlas, Bursky, and Liebich (Count XI).[40] Based on the denial of Baldwin's and OCI's fraud claims, the court dismissed the alter-ego claim as well.[41] Baldwin's and OCI's other claims for breach of contract, breach of fiduciary

---

[38] Pl.'s Mot. Fees & Expenses Pursuant to Rule 88, *Baldwin v. New Wood Res., LLC*, C.A. No. 2019-0019-JRS, Dkt. No. 48 (Del. Ch. March 16, 2020).

[39] A131 (Def.'s Countercl. ¶ 25).

[40] Mar. 20, 2020 Ct. Ch. Ruling, C.A. No. 2018-0350-JRS, at 15:9–12; *see* Order, *Winston Plywood & Veneer LLC v. Oak Creek Invs., LLC*, C.A. No. 2018-0350-JRS, Dkt. No. 66 (Del. Ch. Mar. 27, 2020).

[41] Mar. 20, 2020 Ct. Ch. Ruling, C.A. No. 2018-0350-JRS, at 14:3–7.

duty, and declaratory judgment were not at issue for purposes of the Court of Chancery 12(c) motion for partial judgment on the pleadings.

F. *The April 23, 2020 Written Consent by ACR*

Pursuant to Section 8.2 of the LLC Agreement, New Wood sought a determination as to whether Baldwin and OCI were entitled to indemnification. Under Section 8.2, Baldwin and OCI were entitled to indemnification if they "acted in good faith and in a manner that [they] reasonably believed to be in or not opposed to the best interests of the Company[.]"[42] This determination could be made in one of three ways:

> (a) by a majority vote of all of the Mangers who are not parties to such Proceeding even though less than a quorum or (b) if there are no such Managers, or if such Managers so direct, by independent legal counsel in a written opinion or (c) by holders of a Majority of the then-outstanding Units (determined without regard to any Members that are parties to such Proceeding).[43]

In this case, the determination was made by the holders of a majority of the then-outstanding units. At the time of the indemnification determination, ACR held approximately 85.52 percent of New Wood's then-outstanding units, making it the majority unitholder of New Wood.[44] On April 23, 2020, Bursky, as the President of ACR, executed a Written Consent of Certain Members of New Wood Resources LLC (the "Written Consent").[45] The Written Consent, dated April 23, 2020, stated that

> the undersigned Members, constituting a Majority of the currently outstanding Units (determined without regard to Members that are party to

---

[42] A14 (Pl.'s Am. Compl. ¶ 10).

[43] A15 (Pl.'s Am. Compl. ¶ 10).

[44] A134 (Def.'s Countercl. ¶ 44).

[45] A108–11 (Written Consent).

14

the Lawsuits), (i) are familiar with and have had sufficient time to consider the performance, conduct and behavior of Baldwin prior to his resignation, (ii) are familiar with and have had sufficient time to consider the allegations and claims made by the parties to the Lawsuits, and (iii) have determined that Baldwin failed to act in good faith and in a manner that he reasonably believed to be in or not opposed to the best interests of the Company with respect to the matters at issue in the Lawsuits.[46]

Without explanation, ACR stated that it had determined that "Baldwin failed to act in good faith[.]"[47] The entirety of the Written Consent's "good faith" determination is contained in the following paragraph:

RESOLVED, that undersigned, constituting a Majority of the currently outstanding Units (determined without regard to Members that are party to the Lawsuits), have determined that Baldwin failed to act in good faith and in a manner that he reasonably believed to be in or not opposed to the best interests of the Company, in connection with the matters at issue in the Lawsuits.[48]

New Wood thereafter requested that Baldwin repay the advanced amounts. Baldwin refused.

On August 10, 2020, the Court of Chancery held oral argument in the Advancement Action and provided a ruling on Baldwin's Rule 88 Motion. The parties agreed that New Wood would pay Baldwin "$223,373.70 for advanceable fees and expenses."[49] Thus, the court considered Baldwin's motion "equivalent to a motion for judgment," and the court asked the parties to submit a proposed form of judgment.[50]

---

[46] A109 (Written Consent).

[47] A110 (Written Consent).

[48] *Id*.

[49] Aug. 10, 2020 Ct. Ch. Ruling, C.A. No. 2019-0019-JRS, at 29:17–18.

[50] *Id.* at 31:3–11.

15

On August 26, 2020, the Court of Chancery granted the proposed order in the Advancement Action and entered final judgment (the "Judgment").[51] According to the order, New Wood withdrew "all objections to [Baldwin's and OCI's] counsels' attorney certifications for fees to be advanced to date[.]"[52] Therefore, Baldwin and OCI were entitled to advancement amounts of "$223,373.70 in fees and expenses, plus interest owed as of October 7, 2019 in the amount of $22,994.40, plus prejudgment interest at the Delaware legal rate of 5.25% in the amount of $7,688.31[.]"[53] Further, Baldwin and OCI were entitled to be indemnified in the amount of $111,086.55 for their attorneys' fees and expenses incurred in connection with the Rule 88 Motion, as well as the fees and expenses incurred for time spent preparing invoices, demands, and addressing responses.[54] Combined with the amounts ordered on October 14, 2019, the total amount to be paid to Baldwin by New Wood was $867,211.03, consisting of $541,664.99 in advancement and $325,546.04 in indemnification.[55]

Following the Court of Chancery's order, New Wood failed to honor its obligation to advance Baldwin funds to cover his litigation expenses.[56] According to Baldwin's Counterclaim, New Wood contended that it was "nearing insolvency and did not have the

---

[51] B83–84 (Order Granting Award Pursuant to Rule 88 Mot.).

[52] B83 (Order Granting Award Pursuant to Rule 88 Mot. ¶ 1).

[53] B83–84 (Order Granting Award Pursuant to Rule 88 Mot. ¶ 1). Judgment was entered in favor of Baldwin and OCI for $254,056.41. B84 (Order Granting Award Pursuant to Rule 88 Mot. ¶ 1).

[54] B84 (Order Granting Award Pursuant to Rule 88 Mot. ¶ 2).

[55] Opening Br. Addendum at 6 (*New Wood Res. LLC*, 2021 WL 3784258, at *2). Neither party disputes these sums.

[56] A132 (Def.'s Countercl. ¶ 32).

funds to satisfy the Judgment."[57]  Only after Baldwin domesticated the Judgment in Mississippi and sought discovery concerning New Wood's finances did New Wood comply with the Court of Chancery's order.[58]

G. *The Current Breach of Contract Lawsuit*

On October 26, 2020, New Wood initiated this lawsuit in the Delaware Superior Court against Baldwin seeking to claw back the $867,211.03 New Wood had paid to Baldwin.[59]  New Wood alleged that Baldwin's failure to repay the advanced monies constituted a breach of the LLC Agreement and Baldwin's Undertaking.[60]  In support of its breach of contract claim, New Wood alleged that Baldwin had "failed to act in good faith and in a manner that he reasonably believed to be in or not opposed to the best interests of New Wood, in connection with the matters at issue in the Lawsuits[.]"[61]

In response, Baldwin filed an Answer with affirmative defenses and a counterclaim (the "Counterclaim") against New Wood.  Baldwin asserted the following three affirmative defenses:  (1) under the implied covenant of good faith and fair dealing, the LLC Agreement required the indemnification finding to be made in good faith; (2) Baldwin had acted in good faith; and (3) New Wood's delay in satisfying the judgment issued in

---

[57] A132 (Def.'s Countercl. ¶ 33).

[58] A132–33 (Def.'s Countercl. ¶ 34–35).  The Counterclaim alleges that "[t]o date, New Wood had advanced a total of $867.211.03 to Dr. Baldwin."  A133 (Def.'s Countercl. ¶ 40).

[59] A18 (Pl.'s Am. Compl. ¶¶ 18–20).

[60] A18–19 (Pl.'s Am. Compl. ¶¶ 21–25).

[61] A18 (Pl.'s Am. Compl. ¶ 19).

17

Baldwin's favor in the Advancement Action caused Baldwin to incur expenses offsetting any money he owed to New Wood.[62]

Baldwin's Counterclaim against New Wood asserted that the Written Consent had been entered into "in bad faith and in an attempt to improperly avoid New Wood's indemnification obligations."[63] Baldwin's Counterclaim sought a declaratory judgment that: (i) Section 8.2 of the LLC Agreement contains an implied term that any such indemnification determination must be made in good faith, (ii) the Written Consent was entered into in a bad faith attempt to avoid New Wood's indemnification obligations under the LLC Agreement; (iii) New Wood was required to pay the attorneys' fees and costs Baldwin incurred in domesticating the Judgment in Mississippi, and (iv) Baldwin was entitled to his attorneys' fees and costs for pursing the Counterclaims.[64]

On March 16, 2021, New Wood filed a motion for judgment on the pleadings as to its breach of contract claim and Baldwin's Counterclaim. In response, Baldwin argued that New Wood's motion should be denied because the implied covenant of good faith and fair dealing filled a gap in Section 8.2—namely, that the indemnification decision must be made in good faith.

Baldwin elaborated on these assertions in his pleadings and in the briefing below. As Baldwin alleges in his Counterclaim, New Wood voluntarily refused to comply with the Judgment entered by the Court of Chancery. Specifically, he alleges that:

---

[62] A124 (Def.'s Answer at 13).

[63] A136 (Def.'s Countercl. ¶ 56).

[64] A137 (Def.'s Countercl. ¶ 58).

18

37. Indeed, New Wood refused, through its designee WPV, to voluntarily advance any of the fees owed to Dr. Baldwin.

38. New Wood only complied with its obligation after: (i) the Court of Chancery entered an order compelling New Wood to advance those fees; (ii) the Judgment was entered against New Wood; (iii) the Judgment was domesticated in Mississippi; and (iv) Dr. Baldwin pursued discovery to investigate New Wood's claim of insolvency.

39. Upon information and belief, New Wood was not nearing insolvency and chose to purposefully delay and force Dr. Baldwin to incur needless costs and fees (including attorneys' fees) to domesticate and satisfy the Judgment.[65]

Baldwin alleges that rather than responding to various discovery requests he served, New Wood paid the Judgment thereby mooting the requests.[66]

Citing to his Counterclaims, Baldwin argued in his answering brief below that "[t]he written consent was entered into by ACR in a bad faith attempt to avoid New Wood's indemnification obligations because New Wood has attempted to avoid those obligations by first denying Dr. Baldwin his advancement rights, a position Vice Chancellor Slights 'struggle[ed] [sic] to see . . . a[s] a reasonable one,' and then refused to voluntarily comply with the Judgment."[67]

---

[65] A133 (Def.'s Countercl. ¶¶ 37–39).

[66] See A133 (Def.'s Countercl. ¶ 36) ("On or about December 8, 2020, the eve of New Wood's deadline to respond to Dr. Baldwin's discovery requests—which sought documents showing New Wood's financial health and ability to voluntarily satisfy the Judgment—New Wood attempted to satisfied [sic] the Judgment, with an aim to moot those discovery requests.").

[67] B41 (Super. Ct. Ans. Br. at 13) (alterations in original).

Focusing on New Wood's conduct, and citing to his pleadings, he argued further that New Wood had not acted in good faith:

> The allegations in the Answer, as well as Dr. Baldwin's Affirmative Defenses, indicate that New Wood acted in bad faith and for the sole purpose of improperly avoiding its indemnification obligations. Indeed, Dr. Baldwin's Counterclaims and Affirmative Defenses show that New Wood (i) took what the Court of Chancery found to be an unreasonable position in its argument that Dr. Baldwin was not entitled to advancement, Countercl. ¶ 30, (ii) voluntarily withdrew its meritless claims against Dr. Baldwin, *id.* ¶ 25, (iii) purposefully delayed satisfying the Judgment until Dr. Baldwin domesticat[ed] the Judgment in Mississippi and served discovery on New Wood to investigate its claims of poverty, *id.* ¶¶ 32–37, and (iv) after losing on merits-based determinations related to the parties['] dispute, attempted to claw back the amounts paid to Dr. Baldwin by having ACR enter into the written consent containing no analysis, description, or example of Dr. Baldwin's alleged action. *Id.* ¶ 44–45. It is clear from Dr. Baldwin's allegations that New Wood is attempting to use a procedural tool to deny Dr. Baldwin his right to indemnification, just as New Wood has sought to do since the parties' dispute arose.[68]

Thus, Baldwin argued that "[t]he fact that a majority of [his] advancement was incurred as a result of New Wood's refusal to voluntarily comply with advancement obligations further demonstrates the bad faith with which New Wood (and the other related defendants in the Advancement and Delaware Chancery Action) have conducted themselves in all of these related cases."[69] In sum, he argued that "New Wood, through ACR, made a bad faith determination that Dr. Baldwin was not entitled to indemnification."[70]

---

[68] B44–45 (Super. Ct. Ans. Br. at 16–17).

[69] B42–43 (Super. Ct. Ans. Br. at 14 n.6).

[70] B48 (Super. Ct. Ans. Br. at 20).

The Superior Court heard oral argument during which Baldwin asserted that his Counterclaim was both an implied covenant claim and an independent claim seeking to imply a term in the LLC Agreement.[71] At the conclusion, the Superior Court asked the parties to supplement the record by providing relevant authority relating to Baldwin's latest "implied term claim."[72]

On August 23, 2021, the Superior Court entered judgment in New Wood's favor.[73] The court interpreted the LLC Agreement's language and the Undertaking as expressly requiring Baldwin to repay the $541,644.99 that New Wood had advanced to him.[74] According to the Superior Court, the parties agreed in Section 8.2 of the LLC Agreement that Baldwin would not be entitled to indemnification unless he adhered to the standard of conduct set forth in Section 8.2, *i.e.*, that he acted in good faith and in a manner believed to be in or not opposed to New Wood's best interests.[75] Further, the Superior Court held

---

[71] A193 (*New Wood Res. LLC v. Baldwin*, C.A. No. N20C-10-231 AML CCLD, at 28:13–14 (May 12, 2021) (TRANSCRIPT) [hereinafter May 12, 2021 Super. Ct. Tr.]).

[72] A197 (May 12, 2021 Super. Ct. Tr., C.A. No. N20C-10-231 AML CCLD, at 43:12–44:6).

[73] *New Wood Res. LLC v. Baldwin*, 2021 WL 3784258 (Del. Super. Ct. Aug. 23, 2021).

[74] Specifically, the Superior Court found that

> Baldwin does not dispute that he signed the written undertaking to repay or that a majority of New Woods' unitholders ultimately made a determination that he was not entitled to indemnification in the Delaware Plenary Action. Neither party disputes that Section 8.2's language is clear and unambiguous, and the parties agree on the precise amounts advanced to Baldwin. Even drawing all reasonable inferences in Baldwin's favor, there is no material dispute that Baldwin contractually was required to repay the advanced amounts if it was later determined he was not entitled to indemnification.

*Id.* at *4.

[75] *Id.*

21

that Baldwin's Undertaking required Baldwin to repay all amounts advanced to him because it was ultimately determined that he was not entitled to indemnification. The Superior Court applied this reasoning only with respect to the amounts advanced to Baldwin because only the advance payments were subject to Baldwin's Undertaking.[76] Therefore, Baldwin was not required to reimburse New Wood for amounts previously paid as indemnification.

The court also held that Baldwin had not pled a cognizable counterclaim because he had asserted the claim against the wrong party. The Superior Court focused on the Written Consent executed by the majority of New Woods' unitholders (through ACR, as authorized by its President, Bursky) and ACR's determination that Baldwin had not satisfied Section 8.2's standard of conduct. Accordingly, the court found that "New Wood [could not] be said to have breached the implied covenant of good faith and fair dealing when the challenged decision was made by a non-party."[77]

The Superior Court also rejected Baldwin's assertion that a covenant of good faith and fair dealing is implied in Section 8.2. Baldwin relied on *Dieckman v. Regency GP*

---

[76] *See id.* at *5. Specifically, the court stated the following:

> Sections 8.2 and 8.3 do not authorize claw-back of amounts paid out for indemnification, even if New Wood paid these amounts before any "good faith or best interests" determination. Rather, Sections 8.2 and 8.3 establish the standard that governs when indemnification must be paid. In short, Baldwin is not contractually obligated to reimburse New Wood the $325,546.04 paid as indemnification for the Advancement Action.

> *Id.*

[77] *Id.*

22

*LP*[78] to support his argument that Section 8.2 required any indemnification determination to be made in good faith, and that explicitly including "good faith" language would have been "obvious and provocative."[79]

However, the Superior Court described Baldwin's reliance on *Dieckman* as "misplaced and unsupported by the pleaded facts."[80]  According to the court, *Dieckman* is factually and legally distinct for two reasons.[81]  First, *Dieckman* was decided in the context of a publicly traded master limited partnership, and in that context, investors could not competitively negotiate the partnership agreement's terms and had to rely on the public document and public disclosures.  Second, the safe harbor provision at issue was a voluntary protection that the general partner attempted to utilize to immunize the merger from judicial review.  In contrast, the Superior Court reasoned that the LLC Agreement had been privately negotiated, and that the LLC Agreement expressly mandated a good faith requirement for the indemnitee.  The court stated that imposing an additional free-floating good faith covenant would "subject every express and mandatory provision in the LLC Agreement to fact-intensive and unyielding judicial review[,]" which is "not consistent with" Delaware law.[82]

Similarly, the Superior Court rejected Baldwin's argument that the court should

---

[78] 155 A.3d 358 (Del. 2017).

[79] Baldwin's Answering Br. in Opp. to New Wood's Mot. J. Pleadings, C.A. No. N20C-10-231 AML, Dkt. No. 16, at 21 (Del. Super. Apr. 15, 2021).

[80] *New Wood Res. LLC*, 2021 WL 3784258, at *6.

[81] *Id.*

[82] *Id.*

invoke the doctrine of necessary implication. The court stated that "[t]he doctrine of necessary implication permits a court to read an implied promise into a contract in order to carry out the purpose for which the promise was made or prevent one party from frustrating the other's right to receive the fruits of the contract."[83] The court reasoned that the doctrine did not apply in this case "because the implied term would contradict the LLC Agreement's express language."[84] Therefore, the Superior Court granted New Wood's motion for judgment on the pleadings.

This appeal followed.

## H. The Parties' Contentions on Appeal

Baldwin raises three arguments on appeal. First, he contends that the Counterclaim against New Wood is proper, and that he did not sue the wrong entity. According to Baldwin, even though Bursky executed the Written Consent on behalf of ACR, joining Bursky as a third-party defendant in this lawsuit would serve no purpose because New Wood is the real party in interest. Second, he contends that the covenant of good faith and fair dealing is implicit in Section 8.2 of the LLC Agreement. Alternatively, Baldwin asserts that this Court should invoke the doctrine of necessary implication to imply a term that requires New Wood to make an indemnification determination in good faith.[85]

---

[83] *Id.* (citing *In re IT Grp., Inc.*, 448 F.3d 661, 671 (3d Cir. 2006)).

[84] *Id.*

[85] The Superior Court rejected Baldwin's argument under the doctrine of necessary implication for the same reasons it rejected his implied covenant argument. We note that Baldwin does not cite any Delaware decisions applying this doctrine nor does he explain what distinguishes it from the implied covenant. We do not address or rest our holding on the doctrine of necessary implication.

New Wood argues that Baldwin's affirmative defenses and Counterclaim fail at the outset because New Wood did not execute the Written Consent and, therefore, it cannot be found liable. New Wood argues that even if Baldwin sued the correct party, the implied covenant of good faith cannot be used to rewrite the LLC Agreement. Finally, New Wood asserts that this Court could affirm on alternative grounds—namely, that Baldwin's affidavit of defense was deficient under Delaware law.[86]

## II. STANDARD OF REVIEW

We review questions of law and contractual interpretation, including the interpretation of LLC agreements, *de novo*.[87] We review *de novo* a trial court's judgment granting a motion for judgment on the pleadings.[88]

## III. ANALYSIS

*A. New Wood is the Correct Party*

New Wood argues that because the Written Consent was executed by holders of a majority of the then-outstanding units -- and not New Wood -- Baldwin's Counterclaim

---

[86] New Wood alleges that Baldwin's Affidavit failed to swear to the truth of the facts on which his defenses were based and instead swore only that the facts supporting his defenses were in his Answer. The Superior Court did not address this issue. Nevertheless, we reject this argument and hold that Baldwin's Affidavit was sufficient under 10 *Del. C.* § 3901(a). *See, e.g.*, *J. A. Montgomery, Inc. v. Marks Mobile Homes, Inc.*, 254 A.2d 853, 856 (Del. Super. 1969) (finding defendant's affidavit of defense sufficient where the affidavit referred to facts contained in the answer and were sworn to in the affidavit as correct).

[87] *CompoSecure, L.L.C. v. CardUX, LLC*, 206 A.3d 807, 816 (Del. 2018) (citing *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010)).

[88] S*ee OptiNose AS v. Currax Pharms., LLC*, 264 A.3d 629, 635 (Del. 2021) (citing *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1204 (Del. 1993) ("[O]ur review of the trial court's grant of a motion for judgment on the pleadings presents a question of law, which we review *de novo*.")).

must fail.  We disagree.

Superior Court Civil Rule 17 states that "[e]very action shall be prosecuted in the name of the real party in interest."[89]  Black's Law Dictionary defines a real party in interest as "[a] person entitled under the substantive law *to enforce the right sued on* and who generally, but not necessarily, benefits from the action's final outcome."[90]

The right Baldwin seeks to enforce is his entitlement to indemnification under the LLC Agreement.  The only entity that is required to indemnify Persons under the LLC Agreement is New Wood.  Section 8.2 provides that, subject to its limitations and conditions, Persons meeting the standard of conduct "shall be indemnified by the Company."[91]  "Company" is defined as New Wood.[92]  New Wood is managed by a board

---

[89] Super. Ct. Civ. R. 17(a).  *See* 4 Moore's Federal Practice § 17.10[1] (2022 ed.) ("Real parties in interest are the persons or entities possessing the right or interest to be enforced through the litigation.").

[90] *Real Party in Interest*, Black's Law Dictionary (11th ed. 2019) (emphasis added).  *See Evans v. Just. Of the Peace Ct. No. 19*, 652 A.2d 574, 578 (Del. 1995) (In a case where the Justice of the Peace Court sanctioned a lawyer, this Court held that it was improper to name the Justice of the Peace who sanctioned him because "[t]hat individual Justice of the Peace had and has no cognizable personal interest in the outcome of [the appeal]," and that the real party in interest was the Justice of the Peace Court.); *NorthPointe Holdings, LLC v. Nationwide Emerging Managers, LLC*, 2012 WL 2005453, at *6 (Del. Super. May 24, 2012) ("The real party in interest is one who, by the substantive law, possesses the rights sought to be enforced." (citing *Cammile v. Sanderson*, 101 A.2d 316, 318 (Del. Super. 1953))); *Citimortgage, Inc. v. Trader*, 2011 WL 3568180, at *1 (Del. Super. May 13, 2011) ("A real party in interest is defined as someone who has the right sought to be enforced by the action."); *see also Lynch v. Gonzalez*, 2020 WL 5648567, at 6 n.52 (Del. Ch. Sept. 22, 2020) ("Stated another way, a real party in interest is the person who is entitled to the fruits of the action." (quoting *SolarReserve CSP Holdings, LLC v. Tonopah Solar Energy, LLC*, 2020 WL 4251968, at *4 (Del. Ch. July 24, 2020))).

[91] A52 (Second Am. & Restated LLC Agreement § 8.2).

[92] A28 (Second Am. & Restated LLC Agreement).

26

of managers who conduct the day-to-day activities on behalf of New Wood.[93] Section 8.2 provides that the managers of New Wood, independent legal counsel, or the majority of New Wood's then-outstanding unitholders may determine whether an indemnitee acted in good faith and in the best interests of New Wood. Even though ACR made that determination, New Wood is the entity obligated to indemnify persons or entities who meet the requirements under the LLC Agreement. As New Wood recognized by filing suit in Superior Court, it is also the only entity entitled to claw back funds pursuant to an undertaking if the standard of conduct for indemnification is not met.[94] Thus, New Wood is the real party-in-interest.

## B. Section 8.2 Contains an Implied Covenant of Good Faith and Fair Dealing

"The implied covenant is inherent in all contracts" and ensures that parties do not "frustrat[e] the fruits of the bargain" by acting "arbitrarily or unreasonably."[95] The covenant of good faith and fair dealing "embodies the law's expectation that 'each party to a contract will act with good faith toward the other with respect to the subject matter of the contract.'"[96] The covenant also encompasses "the principle of contract construction that

---

[93] A42 (Second Am. & Restated LLC Agreement § 7.1).

[94] To the extent that Bursky or ACR are needed as fact witnesses, their testimony could be obtained by deposition to explore ACR's basis for determining that Baldwin was not entitled to indemnification and what role, if any, New Wood had in that determination.

[95] *Dieckman*, 155 A.3d at 367.

[96] *Sheehan v. AssuredPartners, Inc.*, 2020 WL 2838575, at *11 (Del. Ch. May 29, 2020) (quoting *Allied Cap. Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1032 (Del. Ch. 2006)).

27

'if one party is given discretion in determining whether [a] condition in fact has occurred[,] that party must use good faith in making that determination.'"[97]

Courts utilize the implied covenant "to infer contract terms 'to handle developments or contractual gaps that the asserting party pleads neither party anticipated[,]'"[98] and courts will invoke the implied covenant to imply terms when necessary to protect the reasonable expectations of the parties.[99]  Thus, the implied covenant is a "cautious enterprise"[100] and is "best understood" as "a judicial tool used to imply terms in a contract that protect the reasonable expectations of the parties to (or beneficiaries of) the contract."[101]

However, Delaware courts do not use the implied covenant as "an equitable remedy for rebalancing economic interests after events that could have been anticipated, but were

---

[97] *Wilmington Leasing, Inc. v. Parrish Leasing Co., L.P.*, 1996 WL 560190, at *2 (Del. Ch. Sept. 25, 1996) (alterations in original) (quoting *Gilbert v. El Paso Co.*, 490 A.2d 1051, 1055 (Del. Ch. 1984), *aff'd,* 575 A.2d 1131 (Del. 1990)); *see also Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 920 (Del. 2021) ("[t]he implied covenant imposes a good faith and fair dealing obligation when a contract confers discretion on a party."); *Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 503–04 (Del. 2019) (noting that "the vesting of a Board with discretion does not relieve the Board of its obligation to use that discretion consistently with the implied covenant of good faith and fair dealing"); *CC Finance LLC v. Wireless Properties, LLC*, 2012 WL 4862337, at *4 (Del. Ch. Oct. 1, 2012) ("[T]he implied covenant is particularly important . . . in contracts that defer a decision at the time of contracting and empower one party to make that decision later.") (citations and quotations omitted); *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146–47, 147 n.1 (Del. Ch. 2009) (collecting authorities for the proposition that "[w]hen a contract confers discretion on one party, the implied covenant requires that the discretion be used reasonably and in good faith.").

[98] *Dieckman*, 155 A.3d at 367 (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010) (internal citations omitted)).

[99] *Id.*

[100] *Oxbox Carbon & Minerals Holdings, Inc.*, 202 A.2d at 506–07 (citing *Nemec*, 991 A.2d at 1125).

[101] *Amirsaleh v. Bd. of Trade of City of New York, Inc.*, 2009 WL 3756700, at *4 (Del. Ch. Nov. 9, 2009) (citing *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 443 (Del. 1966)).

28

not, that later adversely affected one party to a contract."[102] Nor is the implied covenant to be used as a backstop to imply terms that parties failed to include but which could easily have been drafted.[103] But when the contract is "truly silent" about the issue, and the express terms of the partnership agreement naturally imply certain corresponding conditions, unitholders are entitled to have those terms enforced according to the reasonable expectations of the parties at the time of contracting.[104]

The Delaware Limited Liability Company Act (the "Act") gives "maximum effect to the principle of freedom of contract."[105] This provides contracting parties with a wide latitude of contractual freedom.[106] This freedom includes the ability to explicitly expand,

---

[102] *Oxbow Carbon & Minerals Holdings, Inc.*, LLC, 202 A.3d at 507 (quotations removed); *see also Nemec*, 991 A.2d at 1126 ("When conducting [the implied covenant] analysis, we must assess the parties' reasonable expectations at the time of contracting and not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal." (internal citations omitted)).

[103] *See Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*, 112 A.3d 878, 897 (Del. 2015) (stating that courts should be hesitant to imply terms the parties could easily have drafted the contract to include); *Nemec*, 991 A.2d at 1126 ("Parties have a right to enter into good and bad contracts, the law enforces both."); *Airborne Health, Inc.*, 984 A.2d at 147 (holding that the implied covenant does not apply where sophisticated parties "represented by able counsel" opted not to include provisions that "are familiar to any transactional lawyer"); *Corporate Prop. Assocs. 14 Inc. v. CHR Holding Corp.*, 2008 WL 963048, at *5 (Del. Ch. Apr. 10, 2008) (declining to invoke the implied covenant where the parties were sophisticated, the provision sought was well known, and the parties bargained over related issues but did not secure the term they sought to have implied).

[104] *Dieckman*, 155 A.3d at 361; *see id.* at 367 ("The reasonable expectations of the contracting parties are assessed at the time of contracting.").

[105] 6 *Del. C.* § 18-1101(b).

[106] *See Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 290 (Del. 1999) (stating that the LLC statute can be characterized as "flexible" because it "generally permits members to engage in private ordering with substantial freedom of contract to govern their relationship, provided they do not contravene any mandatory provisions of the [LLC statute]").

restrict, or eliminate traditional fiduciary duties.[107] Notwithstanding this freedom, the Act specifically prohibits eliminating the implied covenant of good faith and fair dealing.[108]

"To sufficiently plead [a] breach of the implied covenant of good faith and fair dealing, a complaint 'must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff.'"[109] The party asserting the implied covenant has the burden of proving "that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected."[110] When determining the parties' reasonable expectations, the court analyzes "whether the parties would have bargained for a contractual term proscribing the conduct that allegedly violated the implied covenant had they foreseen the circumstances

---

[107] 6 *Del. C.* § 18-1101(c)*; see Kelly v. Blum*, 2010 WL 629850, at *10 (Del. Ch. Feb. 24, 2010) (determining whether the LLC agreement explicitly expanded, restricted, or eliminated the default fiduciary duties the managers and controlling members owed to the company).

[108] 6 *Del. C.* § 18-1101(c) ("[T]he limited liability company agreement may not eliminate the implied contractual covenant of good faith and fair dealing.").

[109] *Sheehan*, 2020 WL 2838575, at *11 (quoting *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009)).

[110] *Dieckman*, 155 A.3d at 367 (quoting *Nemec*, 991 A.2d at 1126 (citing *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005))); *Desert Equities, Inc.*, 624 A.2d at 1208 (noting that in the context of the implied covenant, "an allegation of bad faith [] relates to state of mind"); *id*. at 1208 n.16 ("[The] term 'bad faith' is not simply bad judgement [sic] or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will." (alteration in original) (citing *Bad Faith*, Black's Law Dictionary (5th ed. 1983)); *see also Amirsaleh*, 2009 WL 3756700, at * 5 ("To prove that the defendant has failed to exercise its discretion in good faith, the plaintiff must show that the exercise of discretion was done in bad faith (*i.e.*, that it was motivated by an improper purpose or done with a culpable mental state).").

under which the conduct arose."[111]

We agree with Baldwin's assertion that the LLC Agreement contains an implied obligation requiring that the indemnification determination be made in good faith. Section 8.2 states that an indemnitee "shall be indemnified by [New Wood] to the fullest extent permitted by the Act[.]"[112] Section 8.2 qualifies the right to indemnification by requiring a determination that the indemnitee "acted in good faith and in a manner that he or she reasonably believed to be in or not opposed to the best interests of [New Wood]."[113] Baldwin's Counterclaim suggests a possible gap -- that a determination of entitlement to indemnification will not be made in "bad faith." We hold that although a good faith requirement is not expressly stated in Section 8.2, it is implicit in Section 8.2's language.

*Dieckman* is instructive. In *Dieckman*, two limited partnerships in the same master limited partnership group sought to merge in a conflicted transaction. The limited partnership agreement provided the general partner with conflict resolution safe harbors if the transaction were approved either by a fully independent special committee or by a majority of unaffiliated unitholders. The partnership agreement did not expressly address how the general partner was to conduct itself when seeking the safe harbors.

To obtain the approval of a majority of unaffiliated unitholders, the limited partnership agreement expressly required a summary disclosure of the merger agreement.

---

[111] *Amirsaleh*, 2009 WL 3756700, at *4 (citing *PAMI-LEMB I Inc. v. EMB-NHC, L.L.C.*, 857 A.2d 998, 1016 (Del. Ch. 2004)); *see also Glaxo Grp. Ltd*, 248 A.3d at 919 ("The court's goal is to preserve the economic expectations of the parties.").

[112] A52–53 (Second Am. & Restated LLC Agreement § 8.2).

[113] A53 (Second Am. & Restated LLC Agreement § 8.2).

31

Instead of a summary disclosure, the general partner distributed a 165-page proxy statement that described at length the planned merger. But the proxy statement failed to disclose that one member of the two-member special committee had alleged "overlapping and shifting allegiances" that might have called into question his independence.

We held that the implied covenant of good faith and fair dealing barred the general partner from seeking safe harbor protection where he had used deceptive and misleading tactics to comply with the safe harbor's express terms. We explained that it was reasonably conceivable that "implied in the language of the [limited partnership agreement's] conflict resolution provision [was] a requirement that the General Partner not act to undermine the protections afforded unitholders in the safe harbor process."[114] Practically speaking, partnership agreement drafters "do not include obvious and provocative conditions in an agreement like 'the General Partner will not mislead unitholders when seeking Unaffiliated Unitholder Approval[.]'"[115] Thus, some aspects of the agreement are "so obvious" that the participants never think, or see no need, to address them.

Just as it would be "too obvious" to demand the inclusion of an express condition that a general partner not subvert a safe harbor protection through materially misleading disclosures, here too, it would be "too obvious" to demand the inclusion of an express

---

[114] *Dieckman*, 155 A.3d at 368 ("Partnership agreement drafters, whether drafting on their own, or sitting across the table in a competitive negotiation, do not include obvious and provocative conditions in an agreement like 'the General Partner will not mislead unitholders when seeking Unaffiliated Unitholder Approval' or 'the General Partner will not subvert the Special Approval process by appointing conflicted members to the Conflicts Committee.'").

[115] *Id.*

condition that the person or persons making a determination as to whether a Person has met the standard of conduct do so in good faith.

The Court of Chancery's opinion in *Wilmington Leasing v. Parrish Leasing*[116] also supports this conclusion. In that case, a limited partnership agreement gave the limited partners a right to remove the general partner if they determined that the general partner had "failed or [was] unable to perform satisfactorily."[117] The limited partners subsequently executed an agreement removing the general partner based on a finding that the general partner's performance was unsatisfactory. The limited partners then sued to enforce the removal against the general partner. In response, the general partner alleged that the purported removal was invalid because it was not made reasonably and in good faith as required by the implied covenant.

The Court of Chancery agreed with the general partner and concluded that the implied covenant of good faith was implicit in the grant of the limited partners' removal power. The court relied on a principle of contract construction that provides that "if one party is given discretion in determining whether [a] condition in fact has occurred[,] that party must use good faith in making that determination."[118] The court explained that without this implied covenant, "the limited partners could remove, maliciously or unreasonably, a general partner who was performing satisfactorily," thus rendering the

---

[116] *Wilmington Leasing*, 1996 WL 560190.

[117] *Id.* at *1.

[118] *Id.* at *2 (citing *Gilbert*, 490 A.2d at 1055).

33

standard of satisfactory performance meaningless.[119]  Accordingly, the Court of Chancery

denied the limited partners' motion for judgment on the pleadings.

The Court of Chancery's decision in *Sheehan v. AssuredPartners, Inc.* is similarly

supportive of our holding.[120]  In *Sheehan*, the Court of Chancery declined to dismiss an

implied covenant claim based on employment agreements that detailed different outcomes

if the employees were fired "with or without [c]ause."[121]  The court stated that the implied

covenant "protects an agreement's spirit against underhanded tactics that deny a party the

fruits of its bargain."[122]  The Court of Chancery explained that although the employment

agreements accounted for "two types of terminations and a process applicable to each," the

employees nevertheless "identifie[d] a possible gap" in the agreements -- that the

terminations "[would] not be done in 'bad faith.'"[123]

Here the LLC Agreement calls for either the managers, legal counsel, or the majority

of the then-outstanding unitholders to make a subjective discretionary determination as to

whether an indemnitee has met a specific standard of conduct.  But the LLC Agreement

does not expressly state whether such determination must be made in good faith.  If

indemnification under Section 8.2 of the LLC Agreement could be denied for any reason,

---

[119] *Id.*

[120] 2020 WL 2838575 (Del. Ch. May 29, 2020).  In *Sheehan*, this Court designated a Superior Court judge to sit by designation in the Court of Chancery action so that one judicial officer could resolve the parties' overlapping and related disputes.

[121] *Id.* at *3.

[122] *Id.* at *11.

[123] *Id.*

even in bad faith, the standard in Section 8.2 — requiring the indemnitee to act in good faith — would be rendered meaningless.[124] Further, the parties bargained for indemnification "to the fullest extent permitted" so long as the indemnitee acted in good faith and in the best interests of New Wood. This "fullest extent" statement is consistent with Delaware's policy of favoring indemnification and advancement rights.[125] Implying a good faith obligation in Section 8.2 is consistent with the policy embedded in the "fullest extent" language of the LLC Agreement and gives effect to this statement.[126]

This Court held two oral arguments on this matter. Following the first panel argument, New Wood appears to have retreated from seriously challenging the existence of an implied covenant of good faith in Section 8.2. During the second *en Banc* argument, counsel for New Wood essentially agreed that an indemnification determination pursuant to Section 8.2 is required to be made in good faith.[127] New Wood also offered no basis

---

[124] *See, e.g.*, *Wilmington Leasing*, 1996 WL 560190, at *2 ("[A]bsent such an implied requirement [of good faith], the limited partners could remove, maliciously or unreasonably, a general partner who was performing satisfactorily.").

[125] *See, e.g., Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561 (Del. 2002) (The purpose of Section 145(a) is to encourage capable persons "to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve.").

[126] *See E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985) ("In upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein.").

[127] The following exchange took place:

> The Court: Let me ask you a question. Hypothetically speaking, if Mr. Burksy signed the so-called Written Consent on behalf of ACR Winston Preferred Holdings, if he was motivated by personal hostility toward Baldwin, rather than any sincere question about what the Agreement says, would that be okay?

upon which to distinguish *Dieckman*, *Wilmington Leasing*,[128] and *Sheehan*,[129] other than the "proper party" and sufficiency of the pleadings grounds. As a result, New Wood's position on this appeal now rests mainly on its assertions that Baldwin sued the wrong party

> New Wood's Counsel: Would that be okay? I do not believe that Mr. Bursky acting on behalf of ACR could engage in bad faith conduct when making that determination. That would not be okay.

Oral argument video, at 25:19–25:1, https://livestream.com/accounts/5969852/events/10395723/videos/231575613.

New Wood's Counsel stated further that Baldwin would have a claim for breach of the implied covenant of good faith if ACR had been named a party:

> The Court: So, if ACR and Mr. Bursky were parties here, would they have a claim?

> New Wood's Counsel: I believe it would have changed the outcome, provided that this Court or the below court made the determination that the allegations of bad faith were sufficiently pled.

Oral argument video, at 29:07–29:22, https://livestream.com/accounts/5969852/events/10395723/videos/231575613. We appreciate counsel's candor before this Court.

[128] Oral argument video, at 26:28–28:25, https://livestream.com/accounts/5969852/events/10395723/videos/231575613.

[129] At the *en Banc* oral argument, other than focusing on the "proper party" issue, New Wood's Counsel did not distinguish *Sheehan*.

> The Court: What about Judge LeGrow's decision a year earlier in *Sheehan v. Assured Partners*, May 29, 2020, doesn't that suggest the majority consent has to be exercised in good faith?

> New Wood's Counsel: Your Honor, I believe the case law as a general matter is where a contract provides a contractual party discretion to make a subjective decision, that the implied covenant will impose an outer limit on that. All of the cases I'm aware of, when those issues arose, the party who made the decision, was actually a party.

Oral argument video, at 28:26–29:00 https://livestream.com/accounts/5969852/events/10395723/videos/231575613.

and that he has not sufficiently alleged bad faith. We have addressed the "proper party" issues above.

As to the sufficiency of his bad faith allegations, the Superior Court did not address this issue, given its other rulings. In the context of a motion for judgment on the pleadings, the court accords the party opposing a motion for judgment on the pleadings the same benefits as a party defending a motion to dismiss.[130] Accordingly, the court accepts the truth of all well-pleaded facts and draws all reasonable factual inferences in favor of the non-moving party — in this case, Baldwin.

Although Baldwin has alleged bad faith on the part of ACR, ACR is not a party. As to New Wood, Baldwin's counsel argued below that New Wood "has taken every opportunity it could to try to avoid paying advancement and now it's trying to avoid indemnification[,]" and that "[i]t's doing that through a procedural route in the LLC Agreement."[131] And although his counsel argued further that New Wood "collaborated with its majority holder," he then conceded that such collaboration on the Written Consent was not actually alleged in Baldwin's Counterclaims or Affirmative Defenses.[132] Thus, New Wood argues that as to the basis for the Written Consent reflecting the conclusion

---

[130] *Catlin Specialty Ins. Co. v. CBL & Assocs. Properties, Inc.*, 2017 WL 4784432, at *5 (Del. Super. Sept. 20, 2017).

[131] A195 (May 12, 2021 Super. Ct. Tr., C.A. No. N20C-10-231 AML CCLD, at 37:6–10).

[132] A195 (May 12, 2021 Super. Ct. Tr., C.A. No. N20C-10-231 AML CCLD, at 38:4–9).

37

that Baldwin had not met the standard of conduct, Baldwin's pleadings are insufficient as to New Wood.

Despite this concession by Baldwin's prior counsel, at this stage of the proceedings, we think that Baldwin's allegations are sufficient — albeit, barely so — to withstand a motion for judgment on the pleadings.[133] The pleadings reveal a hostile and adverse relationship between Bursky, Liebich, and New Wood on the one hand, and Baldwin on the other, beginning with Baldwin's termination and continuing throughout the various lawsuits. Bursky and Liebich were the individuals who allegedly terminated Baldwin from his position as President and General Manager of WPV, according to Baldwin's allegations in the Mississippi Federal Action. Further, Bursky and New Wood were adverse to Baldwin in the prior actions in Mississippi and Delaware leading to the Advancement Action as Bursky was one of the individuals, along with New Wood, sued by Baldwin in Mississippi. Bursky also was a plaintiff in the Delaware Plenary Action where Baldwin was a defendant.[134] Bursky obviously played some role in Baldwin's indemnification determination, as Bursky was the one who signed the Written Consent on behalf of the

---

[133] Baldwin's Answer and Counterclaims refer to and attach some of the prior pleadings by and among Baldwin, New Wood, ACR and Bursky.

[134] The Plaintiffs in the Delaware Plenary Action were Winston Plywood & Veneer LLC, WPV Holdco LLC, New Wood Resources LLC, Atlas FRM LLC d/b/a Atlas Holdings LLC, Andrew M. Bursky and Kurt Liebich. The Defendants were Oak Creek Investments, LLC and Richard Baldwin.

majority unitholder, ACR in his capacity as President of ACR. Baldwin specifically alleges bad faith on the part of ACR.

Although Baldwin does not specifically allege facts indicating that New Wood "collaborated with ACR on the indemnification determination" he does state in his Affirmative Defenses (which were directed to New Wood's claims) that "the Written Consent was entered into in a bad faith attempt to avoid New Wood's indemnification obligations."[135] Baldwin also alleges in his pleadings that New Wood engaged in bad faith conduct in the advancement litigation before and after the April 23, 2020 Written Consent was signed, evidencing a motive to frustrate his advancement and indemnification rights.

Further to this point, Baldwin asserts in his Answer to New Wood's Superior Court complaint that "a majority of the advancement amount that was paid to Dr. Baldwin is the result of Dr. Baldwin's efforts to pursue his advancement rights and collect on a judgment issued by the Delaware Court of Chancery entitling him to those amounts."[136] Similarly, in his Third Affirmative Defense he asserts that "New Wood improperly delayed in satisfying the [J]udgment issued in favor [of] Dr. Baldwin in the Advancement Action, causing Dr. Baldwin to incur needless additional attorneys' fees and costs, and those fees and costs offset any amount New Wood claims it is owed."[137] He alleges that, "New Wood was not nearing insolvency and chose to purposefully delay and force Dr. Baldwin to incur needless costs and fees (including attorneys' fees) to domesticate and satisfy the

---

[135] A124 (Def.'s Answer at 13).

[136] A121 (Def.'s Answer ¶ 18).

[137] A124 (Def.'s Answer at 13).

39

Judgment,"[138] and that "New Wood's purposeful delay was done in bad faith and caused Dr. Baldwin to incur unnecessary additional fees and expenses."[139] He alleges further that "New Wood Resources sought to improperly claw back its payment for the Judgment."[140]

Baldwin further alleges in his Counterclaims that during oral argument on his motion for partial summary judgment in the Advancement Action, the Court of Chancery observed that it struggled to see the Defendants' construction of the agreement "as being a reasonable one . . . ."[141] Later, Baldwin was required to transfer the Judgment in the Delaware Advancement Action against New Wood to Mississippi, then have it domesticated and serve discovery to ultimately recover the fees that New Wood was obligated to pay. Finally, Baldwin alleges in his Counterclaims that "[t]here is a true and judicial [sic] controversy between the parties regarding whether New Wood acted in bad faith in (i) purposefully delaying payment under the Judgment, causing Dr. Baldwin to incur unnecessary additional fees and expenses and (ii) improperly determining that Dr. Baldwin was not entitled to indemnification."[142]

Thus, although Baldwin's pleadings lack specific facts as to New Wood's conduct vis-à-vis the actual Written Consent entered into on April 23, 2020, he does allege bad faith

---

[138] A133 (Def.'s Countercl. ¶ 39).

[139] A136 (Def.'s Countercl. ¶ 52).

[140] A134 (Def.'s Countercl. ¶ 41).

[141] *See* Sept. 16, 2019 Ct. Ch. Tr., C.A. No. 2019-0019-JRS, at 34:21–22.

[142] A136–137 (Def.'s Countercl. ¶ 57).

on the part of New Wood throughout the overall advancement proceedings.[143] Albeit in a disorganized fashion, Baldwin has sufficiently pleaded enough to create an issue of fact as to New Wood's good faith in discharging its obligations under Section 8.2 and to overcome New Wood's contention that it was merely presented with, and acted on, a facially valid consent obtained by ACR.[144] As we have recognized, "a fairly pleaded claim of good faith/bad faith raises essentially a question of fact which generally cannot be resolved on the pleadings or without first granting an adequate opportunity for discovery."[145]

This Court recognizes, as evidenced by the allegations contained in the pleadings in this case, as well as in the Delaware Plenary Action (of which this Court can take judicial notice),[146] that there are two sides to this long-running, multi-state, multi-faceted feud.

---

[143] *See, e.g., Desert Equities, Inc.*, 624 A.2d at 1206 (holding that "[f]or purposes of determining defendants' Rule 12(c) motion, the trial court was required to accept as true the allegations that the General Partner had acted in bad faith and in a retaliatory manner or, at the very least, was required to infer such from the allegations in the complaint."). We give no weight to the unsupported statements in Baldwin's Opening Brief wherein he asserts, with no record citations, that Bursky "executed the Written Consent at the behest and direction of New Wood/New Wood's counsel[,]" and that "it is also a given that Mr. Bursky did not draft the Written Consent and that it was drafted by New Wood's attorneys. . . ." Opening Br. at 21.

[144] *See, e.g., Bay Center Apts. Owner, LLC v. Energy Buy PKI, LLC*, 2009 WL 1124451, *7 (Del. Ch. April 20, 2009) ("In the context of corporate entities, '[t]he implied covenant functions to protect stockholders' expectations that the company and its board will properly perform the contractual obligations they have under the operative organizational agreements[,]'" and that "[p]art of corporate managers' proper performance of their contractual obligations is to use the discretion granted to them in the company's organizational documents in good faith." (quoting *Wood v. Baum*, 953 A.2d 136, 143 (Del. 2008) and citing *Desert Equities, Inc.*, 624 A.2d at 1206); *see also Thompson v. The Williams Cos., Inc.*, 2007 WL 3326007 at *5 (Del. Ch. July 31, 2007) (observing that the implied covenant inheres in advancement and indemnification agreements and protects "against any pretextual terms and conditions designed merely to deny [the plaintiff] advancement.").

[145] *Desert Equities, Inc.*, 624 A.2d at 1208.

[146] *See, e.g., Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 873 n.45 (Del. 2020) (noting that the Court of Chancery has recognized three occasions where a Delaware court may

41

Whether Baldwin is able to prove that New Wood breached the implied covenant of good faith and fair dealing is for another day. Given that Baldwin has not yet had an opportunity to take discovery and given that at this stage of the pleadings all reasonable factual inferences must be drawn in his favor as the non-moving party, we conclude that the judgment of the Superior Court granting New Wood's motion for judgment on the pleadings should be, and hereby is, **REVERSED**.

## IV. CONCLUSION

For the reasons stated herein, we **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

---

consider documents extraneous to a complaint: "(i) when the document is integral to a plaintiff's claim and incorporated into the complaint; (ii) when the document is not being relied upon to prove the truth of its contents; and (iii) when the document, or a portion thereof, is an adjudicative fact subject to judicial notice." (quoting *In re Gardner Denver, Inc.*, 2014 WL 715705, at *2 (Del. Ch. Feb. 21, 2014) (noting that the trial court may take judicial notice of matters that are not subject to reasonable dispute)). *See, e.g.*, *Hamilton Partners, L.P. v. England*, 11 A.3d 1180, 1188 (Del. Ch. 2010) (taking judicial notice of public filings, pleadings in a prior lawsuit in New York, and a complaint in a related action in the Delaware Court of Chancery).